```
             IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| MARIA R. CENTENO, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil No. 04-3784 (JBS) |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY | **OPINION** |
| Defendant. | |

APPEARANCES:

Linda Shay Gardner, Esq.
7 W. Morton Street
Bethlehem, PA 18015
      and
Judith A. Dexter, Esq.
(admitted pro hac vice)
70 E. Broad St.
P.O. Box 1426
Bethlehem, PA 18016-1426
    Attorneys for Plaintiff

Christopher J. Christie
United States Attorney
    By:  Susan Reiss, A.U.S.A.
c/o Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
    Attorney for Defendant

**SIMANDLE**, District Judge:

   This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying the application of Plaintiff Maria R. Centeno for disability insurance benefits

under Title II of the Social Security Act.  Presently before the Court is the motion for summary judgment of Plaintiff Maria R. Centeno, pursuant to Federal Rule of Civil Procedure 56.  This Court must determine if there was substantial evidence presented to support the Administrative Law Judge's (hereinafter "ALJ") decision to deny Plaintiff's disability benefits.  For the reasons discussed herein, Plaintiff's motion for summary judgment will be denied, the Court finds no basis to remand the case for further factual analysis, and the decision of the Commissioner will be affirmed.

### I.   BACKGROUND

Plaintiff Maria Centeno worked as a paralegal for 16 years until she stopped work on June 15, 2001 for medical leave as a result of severe body pains and anxiety.  (R. at 60-61.)  Ms. Centeno has visited approximately 8 doctors in the last six years, and has been diagnosed with:  sleep apnea, depression, spinal degenerative disc disease, obesity, fibromyalgia, and post-traumatic stress disorder.  (R. at 124, 152, 161, 245, 259.) Ms. Centeno has been advised multiple times to have surgery in order to relieve her pains and correct her spinal problems (R. at 104-106) yet she refuses because she is scared of the possibility of paralysis (ALJ Hearing dated August 21, 2003, Tr. at 321.)

Ms. Centeno filed an application with the Social Security Administration on October 17, 2001 claiming that she was entitled to disability insurance benefits under 42 U.S.C. § 423(d)(1)(A).

(R. at 15.)  The application was denied on December 2, 2002, at which time Plaintiff filed a request for a hearing, which the ALJ conducted on August 21, 2003.  (Id.)  Upon consideration of the medical evidence, Plaintiff's own testimony and that of a vocational expert, the ALJ concluded that Ms. Centeno's condition did not meet the statutory definition of "disability" and that she was fully capable of performing "light work."  (R. at 23-25.)  On October 15, 2003, Plaintiff appealed the ALJ's decision.  (R. at 12.)  The Appeals Council denied the request for review on December 11, 2003.  (R. at 5.)  Plaintiff then timely filed suit on February 6, 2004 in the District Court for the Eastern District of Pennsylvania.  (Compl. ¶ 1.)  Defendant later moved for a change of venue to the District of New Jersey, in compliance with the Social Security Act.  (Def. Mtn. Venue at ¶ 2.)  The Act states:  "such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business."  42 U.S.C. § 405(g).  Since Plaintiff is a resident of Stewardsville, New Jersey, this is the proper venue.  (Compl. ¶ 1.)  On August 6, 2004, the case was transferred to this Court and the instant action followed.

## II. DISCUSSION

A.  Standard of Review

This Court has jurisdiction to review any final decision of the Commissioner of Social Security pursuant to 42 U.S.C. §

3

405(g).  "The [C]ourt shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."  Id.  The findings of fact by the Commissioner are deemed conclusive, and where a claim has been denied, this Court may only review the ALJ's possible failure of conforming to the applicable regulations.  Id.  Since the Appeals Council first denied review, this Court is limited to the record as it was presented to the ALJ.  Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001).

The findings of the Commissioner are conclusive if supported by "substantial evidence."  5 U.S.C. § 556(d).  The Supreme Court has defined "substantial evidence" as it applies to disability benefits review as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 400 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

B.    Statutory Standard for Disability Benefits Entitlement

To obtain disability benefits, the claimant bears the burden of showing that he is statutorily disabled by "furnish[ing] such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."  42 U.S.C. § 423(d)(5)(A).  As described supra, this evidence must be "substantial" so as to support a reasonable conclusion of entitlement to disability benefits.

Generally, to qualify as "disabled", a claimant must have "the inability to do any substantial gainful activity[1] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505.  "In deciding whether [a claimant] is disabled, [the [ALJ] will always consider the medical opinions in [each] case record together with the rest of the relevant evidence."  20 C.F.R. § 15.27(b).  A five-part sequential test has been developed to ensure the accuracy of disability determinations.

> The first two steps involve threshold determinations that the claimant is not presently working, and has an impairment which is of the required duration and which significantly limits his ability to work.  In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work.  If the claimant's impairment matches or is "equal" to one of the listed impairments, see 20 C.F.R. Pt. 404, Subpt. P, App. 1, he qualifies for benefits without further inquiry.  If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps.  At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience.  If the claimant cannot do his past work or other work, he qualifies for benefits.

---

[1]Substantial gainful work in the national economy is defined as those positions that exist in large numbers in the region where the claimant lives or in several regions of the country.  42 U.S.C. § 423(d)(2)(A).

Mason v. Shalala, 994 F.2d 1058, 1063 (3d Cir. 1993) (quoting Sullivan v. Zebley, 493 U.S. 521, 525 (1990)); 20 C.F.R. § 404.1520.

C.   The ALJ's Findings and Final Determination

Here, the first step of the test is easily satisfied, because it is undisputed that Plaintiff has not been employed for the past four years.  (R. at 16.)  In applying the second step, the ALJ agreed that Ms. Centeno had medically determinable impairments which limit her activity; however, the ALJ did not find that Ms. Centeno met any of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.)  Plaintiff claims that she has three different listed medical impairments: loss of function in the musculoskeletal system (Listing 1.00), affective disorder (Listing 12.04), and anxiety related disorder (Listing 12.06)[2].  See 20 C.F.R. Pt. 404, Subpt. P, App. 1; (Pl. Br. at 14.)  Although Ms. Centeno has several symptoms, the ALJ held that they cannot collectively satisfy Listings 1.00 or 12.04.  (R. at 17.)  Specifically, to meet the musculoskeletal impairment requirements, the spinal injuries must include: evidence of nerve root compression with sensory/reflex loss and positive straight-leg raising tests; or spinal arachnoiditis[3]; or

---

[2]Listing 12.06 (anxiety related disorder) will not be discussed because the evidence shows that Plaintiff's medical disposition was never based on anxiety-related disorders.  (R. at 127, 139.)

[3]Spinal arachnoiditis is a condition where the membrane covering the brain is thickened causing burning pain and impairment of the senses.  20 C.F.R. Pt. 404 Subpt. P, App. 1, Listing

6

lumbar spinal stenosis[4] resulting in an inability to ambulate effectively[5].  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04(A)-(C).  Here, Ms. Centeno's long-time treating physician, Dr. Christopher Boni, (see Pl. Br. at 4; Tr. at 315), referred Plaintiff to another physician, Dr. Arthur Greene, who conducted an examination in 2001 and could not identify any nerve root compression.  (R. at 251.)  Additionally, Ms. Centeno's later medical opinions conflicted as to her straight-leg tests.  For instance, Dr. P.M. Collalto, an orthopedic specialist who treated Plaintiff for approximately three months, examined Ms. Centeno and found positive straight-leg tests.  (R. at 104.)  In contrast, Dr. Anju Rasagi, a consultative physician, conducted the same examination six months later and got opposite results.  (R. at 151.)  Also, the record does not indicate any evidence of sensory/reflex loss, spinal arachnoiditis, or an inability to ambulate.  (R. at 16.)

The ALJ also determined that the requisite characteristics of an affective disorder are not met either.  To find that an affective disorder exists, a claimant must have restriction or difficulty in maintaining at least two of the following functions

---

1.00(K)(2)(a).

[4]Lumbar spinal stenosis is a condition that may occur as a result of chemical change in tissue or birth defects.  Id. at Listing 1.00(K)(3).

[5]"To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living (without a cane, walker, etc.)."  Id. at Listing 1.00(B)(2)(b).

of Category B:  daily living, social functioning, concentration/pace/persistence, or decompensation[6].  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04(B).  If none of the above requirements of Category B are met then the claimant must have one of the following symptoms of Category C to successfully show that she suffers from an affective disorder:  repeated episodes of decompensation, likelihood of future decompensation, or inability to function without a highly supportive living arrangement.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04(C).

    Ms. Centeno admitted that she still performs normal daily activities such as:  shopping, preparing meals, household maintenance, money management and traveling.  (R. at 82-83.)  In addition, Plaintiff's social functioning cannot be so severely impaired because she recently took a foreign vacation.  (Tr. at 303.)  Lastly, there is no evidence in the record describing decompensation.  Therefore Ms. Centeno cannot possibly satisfy two of the Category B requirements.  She does not meet the requirements of Category C either.  Decompensation is still not shown, and there is no evidence indicating its likelihood to appear in the future.  Plaintiff also offers no evidence showing that she is under the supervision or care of medical professionals in her home.  Additionally, Ms. Centeno performs all of her basic functions without support such as:  feeding,

---

[6]Decompensation is described as failure of the heart to maintain adequate blood circulation, or exacerbation of a mental disorder due to failure of defense mechanisms.

grooming, bathing, dressing, toileting and walking.  (R. at 148.)  Therefore she does not have a highly supportive living arrangement.  As a result of not satisfying the requirements of Categories B or C, the ALJ determined that Plaintiff does not have the symptoms of an affective disorder.  That determination is based upon substantial evidence in the record.

Plaintiff also argues that the medical evidence concerning her global assessment of functioning score[7], fibromyalgia, and post-traumatic stress disorder were improperly rejected.  (R. at 20, 26, 28.)  However, the medical opinions were inconsistent and resulted in the ALJ deciding which evidence was more credible.  "If any of the evidence . . . including medical opinions, is inconsistent, with other evidence . . . [the ALJ] will weigh all of the evidence and see whether . . . [disability exists]."  20 C.F.R. § 404.1527(c)(2).  In addition, good reasons should be given for deciding that one medical opinion is better than another.  See 20 C.F.R. § 404.1527(d).  Otherwise, the opinion of a treating physician should be given great weight when his opinion "reflect[s] expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).  An ALJ does have the authority to reject a medical opinion "outright only on the basis of contradictory medical evidence."  Id.  It is also irrelevant whether doctors feel that the claimant is unable

---

[7]The Global Assessment of Functioning Scale is a rating system used to measure the overall severity of psychiatric disturbance in a patient.  (Pl. Br. Ex. A.)

9

to work.  The ultimate decision regarding ability to work or statutory disability is determined only by the ALJ.  20 C.F.R. § 404.1527(e)(1).

In support of Plaintiff's alleged fibromyalgia, she submitted two medical opinions from Dr. Thomas Sugalski, an independent psychological medical evaluator (IME).  (R. at 179-190).  The first evaluation on March 4, 2003, rated Ms. Centeno at 60 on the Global Assessment of Functioning Scale.  (R. at 190.)  This simply means that Plaintiff experiences moderate symptoms of mental health illness, such as circumstantial speech or occasional panic attacks.  (See Pl. Br., Ex. A.)  Later, upon request of Plaintiff's attorney, Dr. Sugalski issued a letter on August 19, 2003 to clarify his earlier patient evaluation.  (R. at 179.)  In this letter, he contradicted his previous rating of Ms. Centeno's mental stability and changed her score to 40, which includes major impairment of judgment and thinking as well as the inability to work.  (Id.); (Pl. Br., Ex. A.)

Plaintiff claims that the second opinion of Dr. Thomas Sugalski was improperly disregarded.  However, logical reasons were given in support of the ALJ's conclusion to discount Dr. Thomas Sugalski's second opinion.  The ALJ noted that the first evaluation was the result of several days of extensive testing, an interview, and thorough review of records.  (R. at 21.)  In contrast, Dr. Sugalski's second letter was not as detailed as the first, and only contained new conclusions without further testing.  (R. at 179.)  Also, the neuropsychological evaluation

10

that Dr. Sugalski performed more closely resembles a score of 60. (R. at 184-190.) Dr. Sugalski's summary report showed that Ms. Centeno evidenced adequate reading and memory, intact language functions, and temporary emotional problems, all of which are more compatible with a score of 60. (Id.); (See Pl. Br. Ex. A.) Therefore, the ALJ determined that Dr. Sugalski's second opinion consisted of unsupported conclusions and did not classify as substantial credible evidence. See e.g., Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) (holding that evidence is not substantial if it really constitutes only mere conclusions). The ALJ's determination giving less weight to Dr. Sugalski's second opinion letter was well-explained and finds its footing in substantial evidence in the record.

Dr. Christopher Boni's diagnosis of fibromyalgia was not found to be credible either. (R. at 19.) Dr. Boni treated Plaintiff approximately 16 times from November 2000 to June 2001. (R. at 255-262.) Throughout this treatment period, Ms. Centeno was sometimes diagnosed with fibromyalgia and at other sessions her diagnosis was totally different. (Id.) More importantly, the signs of fibromyalgia were not always recorded in the progress notes making the diagnosis totally unsupported. (Id.) Of the 16 times that Ms. Centeno visited Dr. Boni, he noted symptoms of fibromyalgia during only six visits. (Id.) The symptoms of the disease include: "pain all over, fatigue,

11

disturbed sleep, stiffness, and . . . multiple tender spots[8]." <u>Sarchet v.</u> Chater, 78 F.3d 305 (7th Cir. 1996). Ms. Centeno did not have all of these ailments during every visit. <u>Id.</u>

Also, Dr. P. M. Collalto, the orthopedic specialist who observed Ms. Centeno within months of Dr. Boni, agreed that Plaintiff had severe pains but found the fibromyalgia diagnosis to be "questionable." (R. at 106.) Four months after that examination, Dr. I. Ahmad, another orthopedic surgeon, thoroughly examined Ms. Centeno's body pains yet did not conclude that she suffered from fibromyalgia. (R. at 122-123.) Noting these inconsistencies, the ALJ weighed the evidence and found Dr. Boni's conclusions to be less credible than the opinions of Drs. Collalto and Ahmad. (R. at 19); <u>See</u> 20 C.F.R. § 404.1527(c)(2). The ALJ also recognized that Dr. Boni did not document the criteria for fibromyalgia as outlined by the American College of Rheumatology. (R. at 19.) For these reasons, the ALJ rejected Dr. Boni's fibromyalgia diagnosis.

In addition, the ALJ did not accept the therapy reports from Dr. David Cathcart, a family counselor who believes Plaintiff has post-traumatic stress disorder. (R. at 19.) Specific opinions concerning a claimant's eligibility for disability may be rejected because the doctor is not an "acceptable source." <u>Hartranft v. Apfel</u>, 181 F.3d 358, 361 (3d Cir. 1999). The

---

[8]The symptoms were extracted from the American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee, 33 Arthritis & Rheumatism 160 (1990).

12

"acceptable sources" have been defined as:  licensed physicians, osteopaths, psychologists and optometrists.  20 C.F.R. § 416.913.  See also Hartranft v. Apfel, 181 F.3d 358 (3d Cir. 1999) (ruling that a chiropractor is not an acceptable source).  Although the opinions of unacceptable sources will not govern the final decision of an ALJ, he may still consider the opinion in assessing the overall status of the claimant.  Hartranft, 181 F.3d 358, 361.

Here, the ALJ did not choose to accept Dr. Cathcart's medical opinions as credible.  (R. at 19.)  Notwithstanding his position as a family counselor, he also gave minimal descriptions of Ms. Centeno's condition and focused extensively on her relationship with her husband.  (R. at 191-221.)  Throughout Dr. Cathcart's report, he never even refers to Ms. Centeno by name, only as "the veteran and his significant other."  (Id.)  The counseling sessions consisted mainly of discussing problems with Ms. Centeno's daughter, communication between the couple, and the husband's temper and post-traumatic stress disorder.  (Id.)  Thus, the ALJ determined that these sessions do not reflect a conclusion that Ms. Centeno has post-traumatic stress disorder, although she may have been viewed as experiencing severe depression.  (R. at 19.)

Moreover, Dr. Cathcart's opinions were contradicted by other medical professionals.  Dr. Cathcart rated Plaintiff's memory as "fair" and "poor" at times like her judgment (R. at 152), as opposed to Dr. Subhash Javia, another psychiatrist who found that

13

her memory was "grossly intact" and her judgment was "adequate." (R. at 118.)  Therefore, the ALJ had several bona fide reasons for rejecting Dr. Cathcart's evidence as she noted in her thorough decision.  (R. at 19.)

C.   Merits of Plaintiff's Claims

Plaintiff claims that her ailments are so severe that she cannot work.  (Pl. Br. at 33.)  Only an ALJ can determine that a claimant cannot maintain his previous employment.  See 20 C.F.R. § 416.920.  If the ALJ finds that the claimant cannot return to his previous job, then the ALJ must show that jobs exist in the national economy that the claimant can perform.  Id.  A claimant's symptoms alone are not enough to show his inability to work; there must also be a medically determinable impairment.  42 U.S.C. § 423(d)(5)(A).  If there is no proven impairment, other evidence regarding the claimant's symptoms should be considered, such as:  daily activities; nature, location, onset, duration, frequency, radiation and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness of medication and any adverse side effects of medication; and any other treatment or measures which the claimant uses to relieve his pain or other symptoms.  20 C.F.R. § 404.1529(c)(3).  In determining the credibility of a claimant's symptoms, the Social Security Policy Interpretation Ruling states that an ALJ cannot:

> base[] [the decision] on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory

14

> statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding of credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

(Pl. Ex. B, SSR 96-7p.) However, the credibility of the claimant's symptoms will be reduced if "the individual is not following the treatment as prescribed and there are no good reasons for this failure." Id.

Plaintiff did not meet any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, as described supra, so her symptoms were evaluated on an individual basis. Ms. Centeno's daily activities resembled those of a normal mother and wife without severe mental and physical ailments. Plaintiff admitted that she still gets her children ready for school, shops, cooks, cleans and drives. (R. at 82-83.) Also, the nature and location of Ms. Centeno's pains are in her back, but they are not constant. (R. at 147; Tr. at 324.) Plaintiff admits she has "good days and bad days." (Id.) On bad days, she claims that she cries a lot and cannot sit in one position for longer than 15 minutes, or if it is really bad, she must lay

15

down.  (Tr. at 308, 324.)  In an attempt to relieve the body pains and symptoms, Plaintiff has been advised by several of her treating physicians to have surgery and physical therapy.  (R. at 104-106, 147; Tr. at 321.)   Surprisingly, Ms. Centeno has ignored the recommendations of the treating physicians.  Dr. P.M. Collalto and Dr. Thomas Errico, both orthopedic specialists, told Plaintiff that her condition is unlikely to improve without surgery but she has not shown any good reasons for refusing.  (R. at 104-106; Tr. at 321.)  She claims that she is scared of the surgery and would rather try physical therapy first.  (R. at 106; Tr. at 321.)  She began physical therapy but discontinued her treatment once her insurance was terminated.  (Id.)  Although the Social Security Policy Interpretation Ruling does accept the excuse that "individual[s] may be unable to afford treatments and may not have access to free or low-cost medical services", Ms. Centeno is not very worried about trying to receive low-cost physical therapy.  (Pl. Ex. B, SSR 96-7p; Tr. at 322.)  At the hearing, Ms. Centeno disclosed that she is able to receive low-cost treatment at a veteran's hospital, but delays going there and is not concerned about when her appointment is scheduled.  (Id.)  Specifically, Plaintiff admitted:  "I have an appointment, I'm going, no, I don't know.  I called, when did I call?  I have an appointment; I don't know which day it is.  It's written down somewhere."  (Id.)  In addition, Plaintiff claims that her ailments are forcing her to isolate herself and she is losing her former social life.  (Pl. Br. at 5.)  Ms. Centeno told her

16

therapist "I just want to be alone." (R. at 218). Her reasons for withdrawal may be more voluntary than psychiatric. Ms. Centeno testified that her reason for not visiting family often is because they are "different in a lot of ways" so she keeps her distance. (Tr. at 311.) Therefore, medical impairments are not the cause of Ms. Centeno's decrease in social activities.

In sum, the ALJ nevertheless determined that Ms. Centeno is unable to return to her job as a paralegal. (R. at 22.) However, upon consideration of all of the material presented, the ALJ did not accept the claimant's statements that she was unable to work. (R. at 17.) The ALJ properly based this decision primarily on "the degree of medical treatment required, the reports of the

treating and examining practitioners, the medical history, the findings made on examination[s], the claimant's assertions concerning her inability to work, and the claimant's own description of her activities and lifestyle." (R. at 17.)

E.   Plaintiff's Residual Functional Capacity

The ALJ adjudged that Ms. Centeno has the residual functional capacity to perform light work that is low stress and unskilled. (R. at 22.) Residual Functional Capacity is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[9]." SSR 96-8p. The Residual

---

[9]"A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p.

Functional Capacity must not only identify the claimant's functional limitations and restrictions on a function-by-function basis, but also express what exertional level of work the claimant can perform.  Id.

Here, the ALJ adjudged that Ms. Centeno is able to perform low stress unskilled light work "involving simple repetitive one-to-two step tasks and she should have no more than limited contact with the public and co-workers."  (R. at 24.)  The ALJ carefully detailed all of the relevant limitations on activity that Plaintiff should be allowed to perform in her new working capacity.  She stated that Plaintiff could only "lift/carry up to 20 pounds occasionally and 10 pounds frequently, stand and walk up to six hours a day and sit up to six hours per eight-hour day with normal breaks."  (Id.)  A vocational expert testified at the hearing that a person similarly situated with the symptoms of Ms. Centeno could work in approximately 8500 regional jobs and 3,336,000 national jobs.  (Tr. at 332-333.)  These jobs covered an array of interests such as:  electronics workers, sewing machine operators, hand trimmers, table workers, and small product assemblers.  (Id.)  All of these jobs are light-work and do not require any skill.  Therefore Plaintiff can perform a wide variety of light-work jobs that exist not only in the national economy, but in her regional economy as well.  As a result, the ALJ ended her inquiry at Step Five of the Disability Test and determined that Ms. Centeno is not disabled within the meaning of

the Social Security Act, and cannot receive disability insurance benefits.

F.   Standard for Remand of Disability Benefit Cases

Plaintiff argues that the medical opinions of Dr. Subhash Javia were improperly overlooked and warrant a remand of the case for further review.  (Pl. Br. at 27-28.)  This Court can remand a case to the ALJ for further submission of evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).  Plaintiff had approximately two years to submit evidence from October 2001, when she filed an application for disability benefits, to her hearing date, August 21, 2003.  (Pl. Br. at 2.)  In addition, the record was open for an additional 30 days to ensure that all evidence would be included.  (Tr. at 336.)  Most, if not all material evidence, could have been gathered in this large time period.  Therefore, Dr. Javia's late records which were not included cannot be considered by this court.  See Matthews v. Apfel, 239 F.3d 589 (3d Cir. 2001); Newhouse v. Heckler, 753 F.2d 283 (3d Cir. 1985) (explaining how courts may consider new evidence when there is a reasonable possibility that the new evidence would have changed the ALJ's decision).  There existed much more than a mere scintilla of evidence in the record supporting the ALJ's decision to deny disability benefits.  The addition of Dr. Javia's reports about depression (R. at 284-291) would not likely have rebutted the overwhelming amount of

19

previously submitted evidence showing that Ms. Centeno is not disabled.  Numerous medical opinions were submitted, as well as Plaintiff's own testimony and that of a vocational expert.  In light of the substantial evidence and the ability of Ms. Centeno to obtain light-work employment in her region, as discussed <u>supra</u>, it is a reasonable and adequate conclusion that she is not disabled and there is no good cause shown to remand the case.

### III. CONCLUSION

For the above stated reasons, Plaintiff's summary judgment motion will be denied and the Commissioner's decision will be affirmed.  The accompanying Order will be entered.

**June 30, 2005**                       **s/ Jerome B. Simandle**
DATE                                      JEROME B. SIMANDLE
                                               United States District Judge